UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

SHARON PEARSON,                              )
                                             )
                    Plaintiff,               )
                                             )
v.                                           )        No. 1:16-cv-318
                                             )
SPECIALIZED LOAN SERVICING, LLC;             )
THE BANK OF NEW YORK MELLON f/k/a            )
THE BANK OF NEW YORK, as Trustee for         )
the certificate holders of the CWABS, Inc.,  )
asset-backed pass through Certificates,      )
SERIES 2007-8,                               )
                                             )
                    Defendants.              )

## MEMORANDUM OPINION

This matter is before the Court on Defendant Specialized Loan Servicing, LLC's

Motion for Judgment on the Pleadings [doc. 32], Defendant's Brief in Support of the

Motion [doc. 33], Plaintiff's Response in Opposition [doc. 38], and Defendant's Reply

[doc. 40]. For the reasons herein, the Court will grant Defendant's motion in part and

deny it in part.

## I.    BACKGROUND

Plaintiff Sharon Pearson ("Ms. Pearson") alleges that several years ago she entered

into a refinance transaction with an entity called Countrywide Home Loans, Inc., and the

purpose of the transaction was to enable her to obtain a new mortgage loan so she could

pay off existing debt on her home. [Am. Compl., doc. 22, ¶¶ 32, 36]. As part of the

refinance transaction, she claims that she executed a deed of trust, which required her to use her home as collateral for the new loan. [*Id.* ¶ 32]. She maintains that the money for the new loan came from a "securitized trust," which she describes as a body of residential mortgages that financial institutions in the United States "resold" and "pooled" so that they could amass capital to fund mortgage loans like her own. [*Id.* ¶¶ 13, 32–35]. According to Ms. Pearson, she became delinquent on her new loan in December 2011, at which point Defendant Specialized Loan Servicing, LLC ("Specialized Loan Servicing") received servicing rights to it. [*Id.* ¶ 39]. In an effort to restructure her loan, she claims that she applied for "loss mitigation alternatives," or a loan modification, with Specialized Loan Servicing and that she received one. [*Id.* ¶¶ 41–42]. Later, however, a representative of Specialized Loan Servicing allegedly encouraged her, "with the promise of a better modification," to cease making payments on her existing loan modification and to apply for a new loan modification. [*Id.* ¶¶ 42, 44, 56].

Relying on the representative's advice, she claims that she stopped her payments in October 2015 and applied for a new loan modification, but Specialized Loan Servicing rejected her application. [*Id.* ¶¶ 42–44]. She states that its denial of her application was based on an "improper[] review[]." [*Id.* ¶ 44]. Specifically, she asserts that, in denying her application, it both negligently and willfully miscalculated "her gross monthly income as $2,837.06, when, in fact and according to all documentation she supplied, her monthly income is $2,268.85[.]" [*Id.* ¶¶ 44, 52, 56]. As a result, she claims that she did not receive the new loan modification, and a non-judicial foreclosure sale of her home took place a few months later. [*Id.* ¶ 45]. Ms. Pearson now brings this action against

Select Loan Servicing, as well as Defendant The Bank of New York Mellon in its capacity as trustee of the securitized trust rather than in its corporate capacity as a bank. Ms. Pearson's causes of action include (1) wrongful foreclosure (Count I); a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e), (f) (Count II); a violation of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481, (Count III); and a violation of the Tennessee Home Loan Protection Act ("THLPA"), Tenn. Code. Ann. § 45-20-103 (Count IV). [Am. Compl. at 15–21]. Select Loan Servicing now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Ms. Pearson does not state viable claims. [Def.'s Br. at 4–12].

## II. LEGAL STANDARD

Under Rule 12(c), "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.* When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet

3

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

## III. ANALYSIS

The Court begins its analysis by addressing a housekeeping matter as it relates to the allegations in Count III, which Ms. Pearson, in her Amended Complaint, labels with the heading "Violation of Consumer Financial Protection Act." [Am. Compl. at 17]. She pleads that the alleged violation of the CFPA is enforceable not through the CFPA's provisions themselves but through 12 C.F.R. § 1024.41, [*id.* at 18], which contains regulations that a servicer must follow when reviewing any alternatives that a borrower might have to foreclosure, *see* 12 C.F.R. § 1024.41(b)–(k). Section 1024.41, however, provides borrowers with no right of action under the CFPA, contrary to Ms. Pearson's position in her Amended Complaint. Rather, § 1024.41 states that borrowers may enforce its regulations through the Real Estate Settlement Procedures Act ("RESPA"): "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a).

Ms. Pearson, in her response, recognizes for the first time—as she must—that the redress she pursues in Count III is actually appropriate under the RESPA rather than

under the CFPA. [*See* Pl.'s Resp. at 4]. In this circuit, courts typically treat a legal theory that a party raises for the first time in a responsive brief "as an implicit motion to amend the complaint." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F. 3d 733, 740 (6th Cir. 1999) (citation omitted). Ms. Pearson, however, amended her Complaint once and may not amend it again without either Specialized Loan Servicing's consent or the Court's permission. Fed. R. Civ. P. 15(a)(2). Specialized Loan Servicing, though, does not argue that the Court should preclude Ms. Pearson from relying on her new legal theory or that it is inappropriate in any way. In fact, Specialized Loan Servicing concedes that her claim is "actually a [RESPA] claim," [Def.'s Br. at 11], and it proceeds to address the claim's legal sufficiency in the context of the RESPA—as if Ms. Pearson pleaded it this way in her Amended Complaint, [Def.'s Reply at 4–5]. Because Specialized Loan Servicing does not object to the implicit amendment that Ms. Pearson makes by recasting her claim, and because Rule 15(a)(2) "embodies a 'liberal amendment policy,'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quotation omitted), the Court will construe Count III as a claim in which Ms. Pearson pursues recourse under the RESPA.

### A. Wrongful Foreclosure

In Ms. Pearson's wrongful foreclosure claim, Ms. Pearson appears to espouse a hybrid theory of liability against Specialized Loan Servicing,[1] erecting her claim based in part on violations of Tennessee law[2] and in part on a violation of the RESPA:

---

[1] Pleading in the alternative is permissible under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading . . . . may include relief in the alternative or different types of relief."); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency.").

5

45. By failing to comply with the terms of the securitized trust, the Defendants violated the requirements of T.C.A. § 35-5-101, *et seq.*, and Article 1 § 8 of the Tennessee Constitution.

46. Additionally, and as more fully explained below, Defendant [Specialized Loan Servicing] violated the terms of the [RESPA] and such violations prohibit [Specialized Loan Servicing] from proceeding with a foreclosure on Plaintiff's home.

[Am. Compl. ¶¶ 45–46]. The Court will now consider whether these allegations are sufficient to survive scrutiny under Rule 12(c).

### 1. Wrongful Foreclosure under Tennessee Law

In Tennessee, "[w]hile there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-cv-02344-JPM-dkv, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013) (citing *Hutchens v. Bank of Am. N.A.*, No. 3:11-CV-624, 2012 WL 1618316, at *9–10 (E.D.

---

[2] Ms. Pearson alleges that the Court "has jurisdiction over the subject matter of this litigation pursuant to Tennessee Code Annotated § 16-11-101 and 102(a)," although, clearly, neither statute can be a source of the Court's *federal* jurisdiction. [Am. Compl. ¶ 3]. Despite her mistaken assertion that the Court derives federal jurisdiction over this action from state statutes, the Court is not compelled to inquire into its authority to adjudicate the claims in this case because it is confident that it has jurisdiction. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (stating that courts may *sua sponte* inquire into their federal jurisdiction if they have doubts). Ms. Pearson has two claims that clearly arise under federal law—one under the RESPA and another under the FDCPA—and invoke federal question jurisdiction. *See* 28 U.S.C. § 1331. As for the other claims—the claim for wrongful foreclosure and the claim under the THLPA—the Court is satisfied that it may exercise supplemental jurisdiction over them because they are so related to the federal claims that they form part of the same controversy as the federal claims. *See* 28 U.S.C. § 1367(a); *Aldrich v. Univ. of Phoenix, Inc.*, 3:15-CV-00578-JHM, 2015 WL 5923594, at *5 (W.D. Ky. Oct. 9, 2015) ("[S]upplemental jurisdiction need not be specifically pled by a plaintiff in order for a district court to hear [the] state law claims." (citations omitted)).

Tenn. May 9, 2012))). Specialized Loan Servicing argues that Ms. Pearson's allegations lack facts that establish "a right to relief" and "merely describe the nature of the underlying claim." [Def.'s Br. at 4]. In response, Ms. Pearson reiterates that Tennessee law requires no "specific elements for wrongful foreclosure," [Pl.'s Resp. at 5], but fails to explain how this assertion buttresses her claims under the Tennessee Constitution or under Tenn. Code. Ann. section 35-5-101, a statute setting out requirements that a would-be seller of property must meet before initiating "any sale of land to foreclose a deed of trust, mortgage or other lien," Tenn. Code. Ann. § 35-5-101(a).

The Court agrees that Ms. Pearson's claim for wrongful foreclosure is not tenable under the Tennessee Constitution, because the Tennessee Constitution offers no private right to relief. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." (citation omitted)). The same shortcoming, however, does not compromise Ms. Pearson's claim under Tenn. Code. Ann. section 35-5-101, which does entitle an injured party to bring a private action for civil damages against "[a]ny officer, or other person" who violates its provisions. Tenn. Code. Ann. § 35-5-107. Under Tenn. Code. Ann. section 35-5-101, however, parties are always free to "supersede" any statutory requirements by contract, or in other words, to "vary the terms of foreclosure by contract . . . where a deed of trust provision varies from the statutory requirements," *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citation omitted); *see* Tenn. Code. Ann. § 35-5-101(d) ("Nothing in this section shall be

construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments.").

Ms. Pearson's allegations concerning Tenn. Code. Ann. section 35-5-101 appear to strike at the very intersection between this statute and contract law; indeed, she pleads that Specialized Loan Servicing violated Tenn. Code. Ann. section 35-5-101 "[b]y failing to comply with the terms of the securitized trust." [Am. Compl. ¶ 45]. The allegation that this document known as a "securitized trust" existed between the parties—and more precisely, not only existed but also through Specialized Loan Servicing's alleged failure to comply with its provisions, *gave rise* to her home's wrongful foreclosure—uncouples her claim from Tenn. Code. Ann. section 35-5-101 and shifts it into the ambits of contract law. *See Robilio*, 2008 WL 2502114 at *7; *see also* Tenn. Code. Ann. § 35-5-101(d). To plead a sufficient claim for breach of contract claim under Tennessee law, Ms. Pearson must allege facts showing: (1) the existence of an enforceable contract, (2) non-performance amounting to a breach, and (3) damages stemming from that breach. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).

Ms. Pearson, however, fails to identify any provision in the securitized trust—an unspecified document that she has not attached to the Amended Complaint or filed in the record—that Specialized Loan Servicing has breached. Seizing on Ms. Pearson's failure to plead the breach of any specific provision, Specialized Loan Servicing contends that this defect is fatal to her claim, [Def.'s Br. at 6–7], and the Court agrees, *see Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238, at 5* (N.D. Ohio Feb. 21, 2014) ("[F]or a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss

8

under the pleading requirements of *Ashcroft v. Iqbal*, a plaintiff must adequately plead . . . the specific contract provision breached." (footnotes omitted)); *Simmons v. Countrywide Home Loans*, No. 3:09-00621, 2010 WL 1408592, at *3 (M.D. Tenn. Feb. 25, 2010) ("Plaintiffs fail to allege which provisions of the Loan Agreement were breached by Defendants, or how those provisions were breached[.]"). The Court will therefore grant judgment on the pleadings to Specialized Loan Servicing, to the extent that Ms. Pearson she seeks relief against it for wrongful foreclosure under Tennessee law.

### 2. *Wrongful Foreclosure under the RESPA*

Again, Ms. Pearson pleads that Specialized Loan Servicing "violated the terms of the [RESPA]" and was therefore "prohibit[ed] . . . from proceeding with a foreclosure" of her home. [Am. Compl. ¶ 46]. In her response, she elaborates on this allegation, noting that "[t]he specific statutory scheme which [Specialized Loan Servicing] violated and which supports a claim for wrongful foreclosure is 12 C.F.R. § 1024.41." [Pl.'s Resp. at 5]. She pleads that Specialized Loan Servicing violated § 1024.41 by miscalculating her income while reviewing her loss-mitigation application and by "encourag[ing] [her] to miss payments on her modification with the promise of a better modification," a promise that she describes as a "false statement." [Am. Compl. ¶¶ 44, 52, 56]. She claims that these alleged actions were negligent and willful. [*Id.*]. Specialized Loan Servicing maintains that it did not mishandle Ms. Pearson's application, but even if it did, it argues that Ms. Pearson's claim must still fail because § 1024.41 imposes no duty on a servicer to exercise reasonable care when reviewing an application. [Def.'s Reply at 4, 5]. Also, it

9

points out that § 1024.41 does not obligate it to grant a modification to any borrower to begin with. [Def.'s Br. at 11; Def.'s Reply at 4, 5].

Section 1024.41 "prohibits a loan servicer from foreclosing on a property after a borrower submits a loan modification application unless certain conditions are met." *Ray v. U.S. Bank Nat'l Ass'n*, 627 F. App'x 452, 454 (6th Cir. 2015). Specifically, § 1024.41 preserves a borrower's right, before a property's foreclosure sale occurs, to submit and have a servicer review a "loss mitigation application," 12 C.F.R. § 1024.41(b), which is a request for an alternative to foreclosure that the servicer may make available to the borrower, *id.* § 1024.31. To invoke this right, the borrower needs to submit a complete loss-mitigation application to the servicer either before it has initiated foreclosure proceedings, *id.* § 1024.41(f)(1)–(2), or no later than 37 days before a foreclosure sale is to take place, *id.* § 1024.41(c)(1), (g).[3] If the borrower meets either criterion, the servicer must review the borrower's application and determine whether he is eligible for loss-mitigation options. *Id.* § 1024.41(c)(1), (f)(2), (g)(1). After reviewing the application, if the servicer determines that the borrower is ineligible for loss-mitigation options, it may then refer the property to foreclosure once it informs the borrower of the application's rejection. *Id.* § 1024.41(f)(2)(i). At that point, the borrower may exercise his right to pursue an administrative appeal. *Id.* § 1024.41(h). Again, if the servicer violates any of these procedures under § 1024.41, the borrower may then bring suit under § 2605(f) of

---

[3] A borrower's filing of an *incomplete* application also requires review by a servicer if the borrower submits it at least 45 days before a foreclosure sale. 12 C.F.R. § 1024.41(b)(2)(i).

the RESPA, *id.* § 1024.41(a), which permits the borrower to recover actual damages and limited additional damages, 12 U.S.C. § 2605(f)(1)(A)–(B).

As an initial matter, the Court first observes that Specialized Loan Servicing does not challenge whether § 2605(f)—as a remedy for a servicer's violation of the loss-mitigation provisions in 12 C.F.R. § 1024.41—permits borrowers to contest foreclosures that they deem to be wrongful. *See Houston v. U.S. Bank Home Mortg. Wis. Serv.*, 505 F. App'x 543, 546 n.3 (6th Cir. 2012) ("RESPA . . . does not contemplate that a court could set aside a sale." (citing 12 U.S.C. § 2605(f))). Because Specialized Loan Servicing does not raise this argument, the Court will not reject Ms. Pearson's claim based on the unavailability of a remedy under § 2605(f). Instead, it will assess whether the claim is insufficient based on Select Loan Servicing's argument that neither a servicer's negligent review nor a servicer's denial of an application is actionable under 12 C.F.R. § 1024.41.

"[A] duty of care . . . [is] an essential element of any negligence claim." *Ray*, 627 F. App'x at 457 (citation omitted). Ms. Pearson fails to allege that 12 C.F.R. § 1024.41 puts a duty on servicers to review loss-mitigation applications with reasonable care, and her claim fails on this basis alone. Even if Ms. Pearson had alleged that § 1024.41 imposes this type of duty on servicers like Specialized Loan Servicing, her claim would run counter to this circuit's common law. *See Andrade v. Carrington Mortg. Servs., LLC*, No. 1:15-CV-713, 2015 WL 7108119, at *4 (W.D. Mich. Nov. 13, 2015) ("With regard to § 1024.41, courts have rejected negligence claims based on alleged violations of that section, concluding that it imposes no duty on servicers to exercise reasonable care in evaluating a borrower's application for a loan modification."); *Szczodrowski v.*

11

*Specialized Loan Serv., LLC*, No. 15-10668, 2015 WL 1966887, at *6 (E.D. Mich. May 1, 2015) (dismissing a negligence claim under § 1024.41—which the plaintiff had brought against Specialized Loan Servicing—after concluding that this regulation does not support this type of claim). The Court has no need to address whether it concurs with its sister courts' conclusions that a negligence claim is unavailable under § 1024.41 because, again, in this case the Amended Complaint lacks an allegation that § 1024.41 places a duty of care on servicers. The absence of this allegation, in and of itself, precludes Ms. Pearson from moving forward with a negligence claim. *See Ray*, 627 F. App'x at 457.

Still, while some courts have determined that a *negligence* claim is not available under § 1024.41, this Court is unaware of a case—and Specialized Loan Servicing cites none—in which a court has addressed whether § 1024.41 allows for a claim when a borrower alleges that a servicer denied an application after *deliberately* relying on inaccurate information. Ms. Pearson alleges that Select Loan Servicing encouraged her to halt payment on her first loan modification, elicited a new application from her, rejected that application by intentionally relying on inaccurate information, and then referred her home for foreclosure. [Am. Compl. ¶¶ 41–45, 56]. These allegations are serious, partly because once a servicer denies a loss-mitigation application, it can then take action to refer a property to foreclosure, so long as a borrower is not eligible for an appeal or has not requested one within fourteen days. 12 C.F.R. § 1024.41(f)(2)(i); *id.* § 1024.41(h)(1)– (2). The seriousness of these allegations, however, does not make them actionable; instead, to be actionable, these allegations have to support a plausible claim for relief

12

under § 1024.41. And the Court believes that they do, based on a plain reading of the regulation as a whole. *See King v. St. Vincent Hosp.*, 502 U.S. 215, 220 (1991) (following the "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (internal citation and citation omitted)).

In contending that Ms. Pearson's allegations cannot support a plausible claim under § 1024.41, Select Loan Servicing directs the Court to § 1024.41(a)'s plain language, which provides that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." While the Court agrees that this subsection does not obligate a servicer to grant a modification to a borrower, it in no way states that a servicer is without an obligation to perform an accurate review before reaching a decision on whether to grant a modification. The reality is that no provision in § 1024.41 *expressly* addresses whether a servicer's willfully inaccurate review of a borrower's application creates a cause for relief—though some of its provisions highly suggest that it does. *See* 12 C.F.R. § 1024.41(c)(2)(i)–(ii) (providing that a servicer "shall not" conduct an evaluation of an incomplete application unless it remains incomplete for "a significant period of time" after the servicer has "exercised reasonable diligence in obtaining" missing information); *id.* § 1024.41(c)(2)(iv) (referring to a servicer's responsibility to make "corrections" to an application when they are necessary).

If a regulation is ambiguous—that is, "not free from doubt," *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51 (1991) (quotation omitted)—a court may look to an agency's interpretation of that regulation, *see Auer v.*

*Robbins*, 519 U.S. 452, 461–63 (1997); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000). The Court notes that the Bureau of Consumer Financial Protection—the agency to which Congress delegated authority to prescribe and interpret regulations that promote the RESPA's objectives, 12 U.S.C. § 2617(a)—interprets § 1024.41's appeal process as a way for borrowers to address "issues relating to a servicer's evaluation," including a "failure *to correctly* evaluate" an application.[4] Mortgage Servicing Rules under the Real Estate Settlement Procedure Act (Regulation X), 78 Fed. Reg. 10696 (Feb. 14, 2013) (emphasis added). The Bureau's explanation of the scope of the appeals process under § 1024.41(h) speaks to the broader regulation's objective to ensure a thorough and accurate evaluation process. But the Court mentions the Bureau's interpretation only for the sake of edification; it has no need to assess whether § 1024.41 is in fact ambiguous because, simply, Specialized Loan Servicing does not contend that it is ambiguous. *See Christensen*, 529 U.S. at 588 (stating that deference to an agency's interpretation of its own regulation "is warranted only when the language of the regulation is ambiguous").

Rather, Specialized Loan Servicing's contention is that § 1024.41(a)'s plain language exempts it from liability for the alleged inaccurate review that occurred during

---

[4] Specialized Loan Servicing does not argue that Ms. Pearson's claims should fail because she did not exhaust her administrative remedies through this appellate process.

the evaluation process.[5] [Def.'s Br. at 10; Def.'s Reply at 4, 5]. Section 1024.41(a)'s plain language, however, contains no such exemption. Specialized Loan Servicing, in proposing otherwise, grafts words into § 1024.41(a) that are not there—while ignoring the bulk of § 1024.41, which is in large part a compendium of standards that servicers have to abide by to ensure the integrity of every application's evaluation. *See King*, 502 U.S. at 220 (emphasizing the "cardinal rule that a statute is to be read as a whole" (internal citation and citation omitted)); *see also Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 25 n.6 (1988) ("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used[.]" (quotation omitted)). In sum, Specialized Loan Servicing, with the argument it raises under § 1024.41(a), does not convince the Court that Ms. Pearson lacks a cause of action under § 1024.41. The Court will therefore permit her to move forward with her claim under the RESPA—but only to the extent she maintains that Specialized Loan Servicing purposefully, and not negligently, relied on inaccurate information when it reviewed and rejected her application.

---

[5] Specialized Loan Servicing also argues that it "clearly complied" with § 1024.41. [Def.'s Reply at 5]. But the question of whether it did or did not deliberately rely on inaccurate information when reviewing Ms. Pearson's application is one of fact, which the Court cannot resolve at this stage. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014).

**B. Violation of the FDCPA**

The FDCPA's purpose is to protect consumers from abusive debt-collection practices, 15 U.S.C. § 1692e, and a plaintiff may bring a civil action under the FDCPA to recover damages against a debt collector who engages in abusive debt-collection practices, *id.* § 1692k. To state a claim under the FDCPA, a plaintiff must plead (1) that the money or property subject to collection qualifies as a "debt" under § 1692a(5),[6] (2) that the entity acting as a collector qualifies a "debt collector" under § 1692a(6), and (3) that the debt collector violated one of the FDCPA's provisions. *Stamper v. Wilson & Assocs.*, No. 3:09-cv-270, 2010 WL 1408585, at *3 (E.D. Tenn. Mar. 31, 2010). In pursuing judgment on the pleadings, Select Loan Servicing argues that Ms. Pearson fails to state a plausible claim under the second and third elements. [Def.'s Br. at 8–10].

### 1. Debt Collector under § 1692a(6)

The term "debt collector" means "any person[7] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). More succinctly, a debt collector "includes any non-originating debt holder that . . . acquired a debt in default." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012). Ms. Pearson alleges that Select Loan Servicing is as a debt collector

---

[6] Subsection 1692a(5) defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

[7] The term "person" means "a natural person or an organization." 15 U.S.C. § 1602(e).

16

under this definition because it became the servicer of her modification loan when it was in default. [Am. Compl. ¶ 50]. More specifically, she alleges that it began servicing this loan on December 23, 2011, "at which time the loan was delinquent. [*Id.* ¶ 39]. In response, Select Loan Servicing argues that the Court should not accept this allegation as true because it is conclusory. [Def.'s Br. at 9]. Specialized Loan Servicing also contends that this allegation is inconsistent with information appearing in documentation attached to Ms. Pearson's Amended Complaint, as well as with her allegation that she stopped making payments on the loan in October 2015. [*Id.*; Def.'s Reply at 2].

Ms. Pearson's allegation, however, is not conclusory; instead, it is her assertion that Select Loan Servicing performed a particular action—specifically, that it acquired the servicing rights to her loan when it was already in default—and this allegation is therefore entitled to the Court's deference. *See Riley v. Kurtz*, 893 F. Supp. 709, 721 (E.D. Mich. 1995). ("[The allegation] specifically states that defendant performed a particular action . . . . This is not conclusory."). Also, the fact Ms. Pearson's pleading puts forward two different dates for the loan's delinquency is not fatal to her claim because the Court's task is to review her pleading for "*any* set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (emphasis added) (citation omitted). As a result, the Court is bound to accept as true the allegation that Select Loan Servicing became the servicer of Ms. Pearson's loan in 2011 and that the loan was delinquent at that time. If this allegation later turns out to be untrue, the specter of sanctions should guide Ms. Pearson's counsel to take the necessary course of action. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a

17

pleading . . . an attorney . . . certifies that . . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"); *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002) ("[W]e must reverse [dismissal], but we warn [the plaintiff] that if he persists in this litigation and his suit turns out to be frivolous . . . he is courting sanctions." (citations omitted)).[8]

### 2. Violation of the FDCPA's Provisions

Ms. Pearson alleges that Specialized Loan Servicing violated two provisions under the FDCPA, § 1692e and § 1692f. [Am. Compl. ¶¶ 51, 53]. Section 1692e states that a debt collector cannot use "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Similarly, § 1692f provides that a debt collector cannot use "unfair or unconscionable means to collect or attempt to collect any debt." Ms. Pearson alleges that Specialized Loan Servicing violated each of these provisions when it "encouraged [her] to miss payments on her modification with the promise that she would qualify for a better modification" if she filed a new loan-modification application. [*Id.* ¶¶ 42–44, 56]. She also attaches to her Amended Complaint the Rejection Letter [doc. 22-3] that she received from Specialized Loan Servicing when it denied her application. In the Rejection Letter, Specialized Loan Servicing writes in

---

[8] All this aside, the Court notes the Supreme Court's recent opinion in *Henson v. Santander Consumer USA Inc.*, No. 16-349, 2017 WL 2507342 (June 12, 2017), in which the Supreme Court determined that only a third-party collector—that is, an agent working for a debt owner and not a debt owner itself—can qualify as a debt collector under § 1692a(6), *id.* at *3, *7. Had the Supreme Court authored this opinion a few months ago, it may well have served as a useful citation in Specialized Loan Servicing's brief.

18

bold-type words at the letter's head: "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." [*Id.* at 3]. These statements, and Rejection Letter's contents in general, form part of Ms. Pearson's allegations. ("[I]f documents are attached to, incorporated by, or specifically referred to in the complaint, they are considered part of the complaint[.]" (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997))).

Specialized Loan Servicing, however, maintains that these allegations cannot possibly support a claim under either § 1692e or § 1692f because they do not establish that it engaged in any communications "in connection with the collection of a debt." [Def.'s Br. at 10]. Referring to the allegations, Specialized Loan Servicing argues that "it is implausible that such a communication would induce a debtor to pay a debt." [*Id.*]. To buttress this argument, it contends that the allegations fail to satisfy the Sixth Circuit's requirement that a communication, to be in connection with the collection of a debt, has to have "an animating purpose . . . to induce payment by the debtor." [*Id.* (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)].

The test for an "animating purpose" is objective, and under this test, "[w]hether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." *Grden*, 643 F.3d at 172 (citation omitted). But whether a debt collector's communication satisfies this test—from the perspective of the least-sophisticated consumer—is generally a question of fact and therefore not one that the Court can address at this stage. *See Kistner v. Law Officers of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440–41 (6th Cir. 2008) ("[A] jury should

19

determine whether the letter is deceptive and misleading[.]"); *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) ("[W]e treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact." (citation omitted)); *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 776 (7th Cir. 2007) ("[J]udges are not experts in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors. We are no more entitled to rely on our intuitions in this context than we are in deciding issues of consumer confusion in trademark cases, where the use of survey evidence is routine."); *Von Brincken v. GMAC Mortg.*, No. 2:12-cv-01689-GEB-CKD PS, 2013 WL 322909, at *5 (E.D. Cal. Jan. 25, 2013) ("Th[e] [least-sophisticated consumer] standard has nothing to do with the sufficiency of the pleadings . . . . Rather, [it] applies to whether communications between creditor and debtor violate the FDCPA." (citation omitted)); *Robins v. Wolpoff & Abramson LLP*, 422 F. Supp. 2d 1011, 1014 (E.D. Wis. 2006) ("'[H]ow a particular notice affects its audience is a question of fact' and 'may not be dismissed under [Rule] 12(b)(6).'" (quotation and footnote omitted)).

Even if this question were legal and not factual, the Court would still be doubtful that judgment on the pleadings is proper in this particular case, based on the argument that Specialized Loan Servicing raises. While the Court is mindful that the Sixth Circuit, in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003), indicated that, as a matter of law, the enforcement of a security interest is not a debt-collection practice

unless it occurs under § 1692f(6),[9] *id.* at 700–01, Specialized Loan Servicing does not broach *Montgomery* or its progeny. In fact, Specialized Loan Servicing does not at all propose that Ms. Pearson's claim must fail because the debt-collection activity at issue involves mortgage-related payments under a deed of trust. The Court is unable to wade into issues that, though possibly relevant, Specialized Loan Servicing has not itself introduced under *Montgomery*. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). Based on Specialized Loan Servicing's lone argument from the perspective of the least-sophisticated consumer, the Court is simply reluctant to unhitch Ms. Pearson's FDCPA claim from this action, because a determination from the perspective of the least-sophisticated consumer usually, if not necessarily, requires the resolution of factual issues. The Court will decline Select Loan Servicing's invitation to resolve these issues at this stage. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part).

---

[9] Section 1692f(6)(A) exposes a debt collector to liability for "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." In this case, Ms. Pearson alleges that Specialized Loan Servicing threatened her with eviction. [Am. Compl. ¶ 54].

21

### C. Violation of the RESPA

Ms. Pearson's allegations in Count III, which the Court construes as a claim under the RESPA for the reasons it already mentioned, are virtual facsimiles of the allegations in Count I, which is also a claim under the RESPA. The Court has already determined that Ms. Pearson alleges a plausible claim under the RESPA, and the Court will not revisit its reasoning here. The Court, however, cannot permit Count I and Count III to proceed in their current state, as duplicative claims. *See BAC Home Loans Serv. LP v. Fall Oaks Farm LLC*, No. 2:11-cv-274, 2012 WL 3283397, at *3 (S.D. Ohio Aug. 10, 2012) ("[I]t is axiomatic that [the plaintiff] cannot assert two separate counts alleging the exact same claims.") (quotation omitted)); *cf. Foster v. City of Southfield*, Nos. 95-1032, 95-1072, & 95-1526, 1996 WL 742291, at *6 (6th Cir. Dec. 20, 1996) (concluding that the district court committed no error when it declined to submit two claims to the jury that were "duplicative and potentially confusing to the jury"). In light of the overlap between these counts, the Court will not allow Count III to continue as a separate count but will allow its allegations to remain part of the Amended Complaint as an extension of the allegations in Count I. *See Urban Assocs., Inc. v. Sunarrow Ltd.*, No. 04-CV-74835-DT, 2006 WL 539556, at *3 (E.D. Mich. Mar. 6, 2006) (dismissing two counts that mirrored the first count but electing to retain their allegations as "an extension or elaboration" of the first count).

### D. Violation of the THLPA

The THLPA provides borrowers in Tennessee with a private right of action to redress "predatory lending practices" by a lender, servicer, or person. *Sparks v. Dillingham*, No. M2012-01535-COA-R3-CV, 2013 WL 2456386, at *2 (Tenn. Ct. App. June 4, 2013) (citation omitted); *see* Tenn. Code. Ann. §§ 45-20-103, 45-20-104, 45-20-106 (containing requirements that lenders, servicers, and persons must follow to avoid liability for predatory lending practices). The THLPA's prohibitions, however, apply only to certain lending practices involving a precise type of loan known as a "high-cost home loan."[10] *Sparks*, 2013 WL 2456386 at *2; *see* Tenn. Code. Ann. §§ 45-20-103, 45-20-104, 45-20-106. In contending that Ms. Pearson's claim under the THLPA is inadequate, Specialized Loan Servicing maintains that Ms. Pearson "does not make any allegations against [it]" but "alleges only that the securitized trust . . . has violated the THLPA." [Def.'s Br. at 11].

The Court finds no allegations in the Amended Complaint in which Ms. Pearson pleads that Specialized Loan Servicing violated the THLPA, much less allegations of particular conduct that amounts to a violation. Specialized Loan Servicing is correct in that Ms. Pearson alleges a violation of the THLPA only by the securitized trust:

> 60. [T]he securitized trust failed to act with due diligence and is liable as an assignee under the THLP [sic].

---

[10] The THLPA's definition of a "high-cost home loan" is convoluted but basically covers home loans that exceed certain thresholds under the statutory language. *See* Tenn. Code. Ann. § 45-20-102(8).

62.     Given the securitized trust's position as the original lender on this loan (or assignee of Countrywide), its failure to comply with the THLP [sic], subjects it to liability thereunder.

63.     The origination of this loan violated THLP [sic] in the following particulars:

> a. The securitized trust (and/or Countrywide) failed to provide notice as required under T.C.A. § 45-20-103(16);

> b. The securitized trust (and/or Countrywide) caused this high cost loan to be closed at the home of the borrower in violation of T.C.A. § 45-20-103(17)(B);

> c. The Deed of Trust failed to state that it was a 'high cost loan' in violation of T.C.A. § 45-20-103(19)(A);

> d. The Note failed to state that it was a 'high cost loan' in violation of T.C.A. § 45-20-103(19)(B);

> e. The securitized trust (and/or Countrywide) failed to provide the borrower with a notice of availability of loan counselors in violation of T.C.A. § 45-20-103(21).

64.     As a result of the Defendant securitized trust's violations of the THLP [sic], Ms. Pearson is entitled to her actual damages[.]

[Am. Compl. ¶¶ 60, 62–64]. Again, in not one of these allegations does Ms. Pearson implicate, or even mention, Specialized Loan Servicing. In addition, Ms. Pearson pleads that Specialized Loan Servicing is a servicer, not a lender, [*id.* ¶ 39], yet the particular provisions that she cites under the THLPA apply only to lenders. *See* Tenn. Code. Ann. §§ 45-20-103(16), 45-20-103(17)(B), 45-20-103(19)(A)–(B), § 45-20-103(21). The Court has no reason to proceed any further with its analysis. Ms. Pearson falls well short of mounting a sufficient claim against Specialized Loan Servicing under the THLPA.

## IV.   CONCLUSION

Accepting the allegations in the Amended Complaint as true and viewing them in the light most favorable to Ms. Pearson, the Court concludes that Ms. Pearson alleges plausible claims in some respects but not in others. Ms. Pearson states a plausible claim in Count I but only apart from her allegations under Tennessee law, and she also alleges plausible claims in Count II and Count III. While the allegations in Count III comprise a plausible claim, they are duplicative of those in Count I, and the Court therefore cannot permit Count III to stand as an independent claim. Finally, Ms. Pearson fails to plead a plausible claim in Count IV. As a result, Select Loan Servicing's Motion for Judgment on the Pleadings [doc. 32] is **GRANTED in part and DENIED in part**. The Court orders as follows:

1. The Court **GRANTS** judgment on the pleadings as to Count I only to the extent that Ms. Pearson pursues relief under Tennessee law. The Court **DENIES** judgment on the pleadings as to Count I in all other respects.

2. The Court **DENIES** judgment on the pleadings as to Count II.

3. The Court **DENIES** judgment on the pleadings as to Count III, but Count III remains intact not as an independent claim but as an extension of Count I.

4. The Court **GRANTS** judgment on the pleadings as to Count IV.

   **IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge