UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| SHARON PEARSON,<br><br>                  Plaintiff,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC;<br>THE BANK OF NEW YORK MELLON f/k/a<br>THE BANK OF NEW YORK, as Trustee for<br>the certificate holders of the CWABS, Inc.,<br>asset-backed pass through Certificates,<br>SERIES 2007-8,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)      No. 1:16-cv-318<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant Bank of New York Mellon's Motion for Judgment on the Pleadings [doc. 36], Defendant's Brief in Support of the Motion [doc. 37], Plaintiff's Response in Opposition [doc. 38], and Defendant's Reply [doc. 39]. For the reasons herein, the Court will grant Defendant's motion in part and deny it in part.

## I.   BACKGROUND

Plaintiff Sharon Pearson ("Ms. Pearson") alleges that several years ago she entered into a refinance transaction with an entity called Countrywide Home Loans, Inc., and the purpose of the transaction was to enable her to obtain a new mortgage loan so she could pay off existing debt on her home. [Am. Compl., doc. 22, ¶¶ 32, 36]. As part of the refinance transaction, she claims that she executed a deed of trust, which required her to

use her home as collateral for the new loan. [*Id.* ¶ 32]. She maintains that the money for the new loan came from a "securitized trust," which she describes as a body of residential mortgages that financial institutions in the United States "resold" and "pooled" so that they could amass capital to fund mortgage loans like her own. [*Id.* ¶¶ 13, 32–35]. According to Ms. Pearson, she became delinquent on her new loan in December 2011, at which point Defendant Specialized Loan Servicing, LLC ("Specialized Loan Servicing") received servicing rights to it. [*Id.* ¶ 39]. In an effort to restructure her loan, she claims that she applied for "loss mitigation alternatives," or a loan modification, with Specialized Loan Servicing and that she received one. [*Id.* ¶¶ 41–42]. Later, however, a representative of Specialized Loan Servicing allegedly encouraged her, "with the promise of a better modification," to cease making payments on her existing loan modification and to apply for a new loan modification. [*Id.* ¶¶ 42, 44, 56].

Relying on the representative's advice, she claims that she stopped her payments in October 2015 and applied for a new loan modification, but Specialized Loan Servicing rejected her application. [*Id.* ¶¶ 42–44]. She states that its denial of her application was based on an "improper[] review[]." [*Id.* ¶ 44]. Specifically, she asserts that, in denying her application, it both negligently and willfully miscalculated "her gross monthly income as $2,837.06, when, in fact and according to all documentation she supplied, her monthly income is $2,268.85[.]" [*Id.* ¶¶ 44, 52, 56]. As a result, she claims that she did not receive the new loan modification, and a non-judicial foreclosure sale of her home took place a few months later. [*Id.* ¶ 45]. Ms. Pearson now brings this action against Select Loan Servicing, as well Defendant The Bank of New York Mellon ("Bank of New York

Mellon") in its capacity as trustee of the securitized trust rather than in its corporate capacity as a bank.[1] Ms. Pearson's causes of action include (1) wrongful foreclosure (Count I); a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(e), (f) (Count II); a violation of the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5481, (Count III); and lastly, a violation of the Tennessee Home Loan Protection Act ("THLPA"), Tenn. Code. Ann. § 45-20-103 (Count IV). [Am. Compl. at 15–21]. The Bank of New York Mellon now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Ms. Pearson does not state viable claims. [Def.'s Br. at 5–19].

## II. LEGAL STANDARD

Under Rule 12(c), "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a

---

[1] Ms. Pearson makes this distinction in the case caption, and the Court notes that "a trust company acting in its capacity as trustee for certain bondholders acts in 'an entirely different capacity' when it acts in its individual capacity as a bank trust company." *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 897 F. Supp. 2d 633, 638 (S.D. Ohio 2012) (quoting *Union Guardian Tr. Co. v. Detroit Tr. Co.*, 72 F.2d 120, 121 (6th Cir. 1934)); *see Trustee, Black's Law Dictionary*, (10th ed. 2014) (defining a "trustee" as "[s]omeone who stands in a fiduciary or confidential relation to another; esp., one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary").

3

reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.* When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

## III.  ANALYSIS

The Court begins its analysis by addressing a housekeeping matter as it relates to the allegations in Count III, which Ms. Pearson, in her Amended Complaint, labels with the heading "Violation of Consumer Financial Protection Act." [Am. Compl. at 17]. She pleads that the alleged violation of the CFPA is enforceable not through the CFPA's provisions themselves but through 12 C.F.R. § 1024.41, [*id.* at 18], which contains regulations that a servicer must follow when reviewing any alternatives that a borrower might have to foreclosure, *see* 12 C.F.R. § 1024.41(b)–(k). Section 1024.41, however, provides borrowers with no right of action under the CFPA, contrary to Ms. Pearson's position in her Amended Complaint. Rather, § 1024.41 states that borrowers may enforce its regulations through the Real Estate Settlement Procedures Act ("RESPA"): "[A]

Case 1:16-cv-00318-TWP-SKL   Document 46   Filed 07/24/17   Page 4 of 15   PageID #: 469

borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a).

Ms. Pearson, in her response, recognizes for the first time—as she must—that the redress she pursues in Count III is actually appropriate under the RESPA rather than under the CFPA. [*See* Pl.'s Resp. at 4]. In this circuit, courts typically treat a legal theory that a party raises for the first time in a responsive brief "as an implicit motion to amend the complaint." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F. 3d 733, 740 (6th Cir. 1999) (citation omitted). Ms. Pearson, however, amended her Complaint once and may not amend it again without either the Bank of New York Mellon's consent or the Court's permission. Fed. R. Civ. P. 15(a)(2). The Bank of New York Mellon, though, does not argue that the Court should preclude Ms. Pearson from relying on her new legal theory or that it is inappropriate in any way. In fact, the Bank of New York Mellon concedes that her claim is "actually . . . a claim under the [RESPA]," [Def.'s Br. at 12–13], and it proceeds to address the claim's legal sufficiency in the context of the RESPA—as if Ms. Pearson pleaded it this way in her Amended Complaint, [*id.*; Def.'s Reply at 2]. Because the Bank of New York Mellon does not object to the implicit amendment that Ms. Pearson makes by recasting her claim, and because Rule 15(a)(2) "embodies a 'liberal amendment policy,'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quotation omitted), the Court will construe Count III as a claim in which Ms. Pearson pursues recourse under the RESPA.

## A. Wrongful Foreclosure

Ms. Pearson's wrongful foreclosure claim consists of six paragraphs. Two of those paragraphs contain a description of the law in Tennessee. [Am. Compl. ¶¶ 42, 44]. One of them contains an allegation against the so-called securitized trust. [*Id.* ¶ 43]. Another of them is a joint allegation in which Ms. Pearson implicates Specialized Loan Servicing and the Bank of New York Mellon in the alleged wrongful foreclosure. [*Id.* ¶ 45]. Another of them is an allegation against Specialized Loan Servicing only. [*Id.* ¶ 46]. And the final paragraph deals with damages. [*Id.* ¶ 47]. In sum, Ms. Pearson limits her allegations against the Bank of New York Mellon to a single paragraph, and that paragraph reads:

> 45. By failing to comply with the terms of the securitized trust, the Defendants violated the requirements of T.C.A. § 35-5-101, *et seq.*, and Article 1 § 8 of the Tennessee Constitution.

[Am. Compl. ¶ 45].[2] By all appearances, Ms. Pearson's claim for wrongful foreclosure, as it applies to the Bank of New York Mellon in this paragraph, is a claim under Tennessee law.

---

[2] Ms. Pearson alleges that the Court "has jurisdiction over the subject matter of this litigation pursuant to Tennessee Code Annotated § 16-11-101 and 102(a)," although, clearly, neither statute can be a source of the Court's *federal* jurisdiction. [Am. Compl. ¶ 3]. Despite her mistaken assertion that the Court derives federal jurisdiction over this action from state statutes, the Court is not compelled to inquire into its authority to adjudicate the claims in this case because it is confident that it has jurisdiction. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (stating that courts may *sua sponte* inquire into their federal jurisdiction if they have doubts). Ms. Pearson has two claims that clearly arise under federal law—one under the RESPA and another under the FDCPA—and invoke federal question jurisdiction. *See* 28 U.S.C. § 1331. As for the other claims—the claim for wrongful foreclosure and the claim under the THLPA—the Court is satisfied that it may exercise supplemental jurisdiction over them because they are so related to the federal claims that they form part of the same controversy as the federal claims. *See* 28 U.S.C. § 1367(a); *Aldrich v. Univ. of Phoenix, Inc.*, 3:15-CV-00578-JHM, 2015 WL 5923594,

In Tennessee, "[w]hile there are no specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-cv-02344-JPM-dkv, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013) (citing *Hutchens v. Bank of Am. N.A.*, No. 3:11-CV-624, 2012 WL 1618316, at *9–10 (E.D. Tenn. May 9, 2012))). The Bank of New York Mellon contends that Ms. Pearson's allegations lack facts that establish "a right to relief." [Def.'s Br. at 6]. In response, Ms. Pearson reiterates that Tennessee law requires no "specific elements for wrongful foreclosure," [Pl.'s Resp. at 5], but fails to explain how this assertion buttresses her claims under the Tennessee Constitution or under Tenn. Code. Ann. section 35-5-101, a statute setting out requirements that a would-be seller of property must meet before initiating "any sale of land to foreclose a deed of trust, mortgage or other lien," Tenn. Code. Ann. § 35-5-101(a).

The Court agrees that Ms. Pearson's claim for wrongful foreclosure is not tenable under the Tennessee Constitution, because the Tennessee Constitution offers no private right to relief. *See Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution." (citation omitted)). The same shortcoming, however, does not compromise Ms. Pearson's claim under Tenn. Code. Ann. section 35-5-101, which does entitle an injured party to bring a private action for civil damages against "[a]ny officer, or other person" who violates its

---

at *5 (W.D. Ky. Oct. 9, 2015) ("[S]upplemental jurisdiction need not be specifically pled by a plaintiff in order for a district court to hear [the] state law claims." (citations omitted)).

provisions. Tenn. Code. Ann. § 35-5-107. Under Tenn. Code. Ann. section 35-5-101, however, parties are always free to "supersede" any statutory requirements by contract, or in other words, to "vary the terms of foreclosure by contract . . . where a deed of trust provision varies from the statutory requirements," *Fed. Nat'l Mortg. Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114, at *7 (Tenn. Ct. App. June 24, 2008) (citation omitted); *see* Tenn. Code. Ann. § 35-5-101(d) ("Nothing in this section shall be construed as applying to any notice published in accordance with any contract entered into heretofore, and expressed in a mortgage, deed of trust or other legal instruments.").

Ms. Pearson's allegations concerning Tenn. Code. Ann. section 35-5-101 appear to strike at the very intersection between this statute and contract law; indeed, she pleads that the Bank of New York Mellon violated Tenn. Code. Ann. section 35-5-101 "[b]y failing to comply with the terms of the securitized trust." [Am. Compl. ¶ 45]. The allegation that this document known as a "securitized trust" existed between the parties—and more precisely, not only existed but also through the Bank of New York Mellon's alleged failure to comply with its provisions, *gave rise* to her home's wrongful foreclosure—uncouples her claim from Tenn. Code. Ann. section 35-5-101 and shifts it into the ambits of contract law. *See Robilio*, 2008 WL 2502114 at *7; *see also* Tenn. Code. Ann. § 35-5-101(d). To plead a sufficient claim for breach of contract claim under Tennessee law, Ms. Pearson must allege facts showing: (1) the existence of an enforceable contract, (2) non-performance amounting to a breach, and (3) damages stemming from that breach. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006).

Ms. Pearson, however, fails to identify any provision in the securitized trust—an unspecified document that she has not attached to the Amended Complaint or filed in the record—that the Bank of New York Mellon has breached. Seizing on Ms. Pearson's failure to plead the breach of any specific provision, the Bank of New York Mellon contends that this defect is fatal to her claim, [Def.'s Br. at 6–7], and the Court agrees, *see Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238, at 5* (N.D. Ohio Feb. 21, 2014) ("[F]or a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss under the pleading requirements of *Ashcroft v. Iqbal*, a plaintiff must adequately plead . . . the specific contract provision breached." (footnotes omitted)); *Simmons v. Countrywide Home Loans*, No. 3:09-00621, 2010 WL 1408592, at *3 (M.D. Tenn. Feb. 25, 2010) ("Plaintiffs fail to allege which provisions of the Loan Agreement were breached by Defendants, or how those provisions were breached[.]"). The Court will therefore grant judgment on the pleadings to the Bank of New York Mellon.

## B. Violation of the FDCPA

The FDCPA's purpose is to protect consumers from abusive debt-collection practices, 15 U.S.C. § 1692e, and a plaintiff may bring a civil action under the FDCPA to recover damages against a debt collector who engages in abusive debt-collection practices, *id.* § 1692k. To state a claim under the FDCPA, a plaintiff must plead (1) that the money or property subject to collection qualifies as a "debt" under § 1692a(5), (2) that the entity acting as a collector qualifies a "debt collector" under § 1692a(6), and (3) that the debt

9

collector violated one of the FDCPA's provisions. *Stamper v. Wilson & Assocs.*, No. 3:09-cv-270, 2010 WL 1408585, at \*3 (E.D. Tenn. Mar. 31, 2010).

The Bank of New York Mellon argues that Ms. Pearson's claim is deficient and unable to withstand scrutiny under Rule 12(c) because it "consists only of allegations related to Defendant [Specialized Loan Servicing]." [Def.'s Br. at 11]. It is correct on this point. Ms. Pearson musters not a single allegation against the Bank of New York Mellon, in its capacity as trustee or otherwise. The Court must therefore grant judgment on the pleadings to the Bank of New York Mellon. *See United States v. O'Shea*, No. 5:12-cv-04075, 2013 WL 2389689, at \*3 (S.D. W. Va. May 30, 2013) ("Plaintiff offers nothing to support its lone reference of [the defendant] in its case caption as the [t]rustee. Certainly, Plaintiff has not alleged any action or inaction taken by [the defendant] as [t]rustee. . . . Consequently, the Court finds that [the defendant's] motion to dismiss should be granted.").

## C. Violation of the RESPA

In the claim under the RESPA, as with the previous claim, Ms. Pearson maintains that Specialized Loan Servicing, rather than the Bank of New York Mellon, is the responsible party. She alleges that "[Specialized Loan Servicing] violated the terms of the [RESPA]" and was therefore "prohibit[ed] . . . from proceeding with a foreclosure" of her home. [Am. Compl. ¶ 46]. In her response, she elaborates on this allegation, noting that "[t]he specific statutory scheme which [Specialized Loan Servicing] violated and which supports a claim for wrongful foreclosure is 12 C.F.R. § 1024.41." [Pl.'s Resp. at 5].

Case 1:16-cv-00318-TWP-SKL    Document 46    Filed 07/24/17    Page 10 of 15
PageID #: 475

Section 1024.41 "prohibits a loan servicer from foreclosing on a property after a borrower submits a loan modification application unless certain conditions are met," *Ray v. U.S. Bank Nat'l Ass'n*, 627 F. App'x 452, 454 (6th Cir. 2015), and "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))," 12 C.F.R. § 1024.41(a).

As the Bank of New York Mellon correctly points out, however, Ms. Pearson does not allege that it is a servicer or was in any way a participant, directly or indirectly, in a review of her loan modification application. [*See* Def.'s Resp. at 14, 16]. In fact, she raises no allegation against the Bank of New York Mellon at all. She complains of conduct only by Specialized Loan Servicing. The Court must therefore grant judgment on the pleadings to the Bank of New York Mellon.

### D. Violation of the THLPA

The THLPA provides borrowers in Tennessee with a private right of action to redress "predatory lending practices" by a lender, servicer, or person. *Sparks v. Dillingham*, No. M2012-01535-COA-R3-CV, 2013 WL 2456386, at *2 (Tenn. Ct. App. June 4, 2013) (citation omitted); *see* Tenn. Code. Ann. §§ 45-20-103, 45-20-104, 45-20-106 (containing requirements that lenders, servicers, and persons must follow to avoid liability for predatory lending practices). The THLPA's prohibitions, however, apply only to certain lending practices involving a precise type of loan known as a "high-cost home loan." *Sparks*, 2013 WL 2456386 at *2; *see* Tenn. Code. Ann. §§ 45-20-103, 45-20-104, 45-20-106. The Bank of New York Mellon maintains that Ms. Pearson's claim is deficient

because she fails to plead facts showing that her loan is a high-cost home loan and because the applicable statute of limitations bars her claim. [Def.'s Resp. at 16–18].

### 1. High-Cost Home Loan

A "high-cost home loan" is a home loan[3] whose terms exceed one of two statutorily defined monetary thresholds, either (1) "the rate threshold" or (2) "total points and fees threshold." Tenn. Code. Ann. § 45-20-102(8). Under Tenn. Code Ann. subsection 45-20-102(17)(A), the definition of "total points and fees threshold" is:

> [T]he total points and fees payable by the borrower at or before the loan closing that exceed:
>
> (A) The greater of five percent (5%) of the total loan amount or two thousand four hundred dollars ($2,400), if the total loan amount is more than thirty thousand dollars ($30,000)[.]

Ms. Pearson alleges—and the Bank of New York Mellon concedes—that the amount of her loan exceeds $30,000 and, specifically, that the amount is $101,000. [Itemization, doc. 22-1, at 2; Def.'s Resp. at 17]. This allegation places her loan within subsection 45-20-102(17)(A)'s framework. Ms. Pearson also alleges that the total points and fees that she has paid on her loan is $6,733.30, and she alleges that this amount is "the greater of five percent of the total loan or $2,400 for loans exceeding $30,000.00." [Am. Compl. ¶¶ 36–37]. When the Court accepts her alleged figure of $6,733.00 as her true payment in total

---

[3] The term "home loan" means a loan "secured by a mortgage or deed of trust on real estate in this state, upon which there is located or there is to be located a structure: (i) Designed principally for occupancy by one (1) to four (4) families; and (ii) That is or will be occupied by a borrower as the borrower'' principal dwelling[.]" Tenn. Code. Ann. § 45-20-102(9)(C)(i)–(ii). The Bank of New York Mellon does not contend that Ms. Pearson's loan fails to meet the definition of a "home loan" under the THLPA.

points and fees to date, her calculation clearly exceeds the total points and fees threshold under subsection 45-20-102(17)(A). *See* Tenn. Code. Ann. § 45-20-102(8). Ms. Pearson therefore pleads sufficient facts showing that her loan qualifies as a high-cost home loan under the THLPA.

### 2. *Statute of Limitations*

The THLPA requires a plaintiff to bring a claim "within three (3) years from the date the borrower discovered or should have discovered the violation." Tenn. Code Ann. 45-20-107(e). The Bank of New York Mellon contends that Ms. Pearson's claim is not timely under the THLPA because Ms. Pearson, based on her allegations, obtained her loan in 2007. [Def.'s Resp. at 18; Am. Compl. ¶ 32]. The Bank of New York Mellon believes that "the alleged violations of the THLPA should have been discovered by [Ms. Pearson] upon execution of the loan documents" and, on this basis, invites the Court to conclude that the three-year statute of limitations began to run in 2007. [*Id.*].

But the Bank of New York Mellon provides the Court with no case law to support its argument, offering the Court nothing more than its opinion that Ms. Pearson should have discovered the alleged wrongdoing when she executed her loan. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted); *see also* E.D. Tenn. L.R. 7.1(b) (requiring parties to provide the Court with the "legal grounds which justify

13

the ruling sought from the Court"). Tennessee courts, to determine whether statute of limitation has lapsed, follow the "discovery rule," a common-law rule that, similarly to the language in the THLPA, states that a cause of action accrues "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause therof." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996) (citation omitted); *see Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620–21 (Tenn. 2002).

Under the discovery rule, the question of whether a statute of limitation has expired is one of fact. *See Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503, 509 (Tenn. 2012) ("The question of whether a plaintiff has exercised reasonable diligence and care in discovering that he has a cause of action . . . is a question of fact." (citing *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995))). On a motion to dismiss—or similarly, on a motion under Rule 12(c), whose standard, again, is identical to the standard that governs a motion to dismiss—the Court cannot consider a question of fact. *See, e.g.*, *Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014). At this stage in the litigation, the Court therefore declines to reject Ms. Pearson's claim based on the factual issues that the Bank of New York Mellon raises under the statute of limitations.

14

## IV. CONCLUSION

To the extent that Ms. Pearson seeks to hold the Bank of New York Mellon liable under her four claims in the Amended Complaint, her claim in Count IV survives scrutiny under Rule 12(c) but the remainder of her claims do not. As a result, the Bank of New York Mellon's Motion for Judgment on the Pleadings [doc. 36] is **GRANTED in part and DENIED in part**. The Court orders as follows:

1.  The Court **GRANTS** judgment on the pleadings as to Count I, Count II, and Count III.

2.  The Court **DENIES** judgment on the pleadings as to Count IV.

    **IT IS SO ORDERED.**

                         ENTER:

                         s/ Thomas W. Phillips
                         United States District Judge